IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN K. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) No. 11-432 DRH/PMF |
| | ) |
| BRIAN S. DUNCAN, KELLY MILLER, LARRY G. HALLMAN, CORNEALIOUS SANDERS, BRIAN FAIRCHILD, individually and in his official capacity as Chairman, Administrative Review Board, Illinois Department of Corrections, GERARDO ACEVEDO, and GLADYSE C. TAYLOR, in her official capacity as Acting Director, Illinois Department of Corrections, | ) |
| | ) |
| Defendants. | ) |

COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, John K. Adams, by his attorney, Richard J. Whitney, and for his Complaint against Defendants Brian S. Duncan, Kelly Miller, Larry G. Hallman, Cornealious Sanders, Brian Fairchild, sued individually and in his official capacity as Chairman of the Administrative Review Board, Illinois Department of Corrections, Gerardo Acevedo, and Gladyse C. Taylor, sued in her official capacity as Acting Director of the Illinois Department of Corrections, states:

JURISDICTION AND VENUE

This Complaint is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Eighth Amendment to the Constitution of the United States. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions. Venue in this Court exists and is proper pursuant to 28 U.S.C. § 1391 (b), in that a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Southern District of

1

Illinois.

## PARTIES

1. Plaintiff John K. Adams is a citizen of the United States and resident of the State of Illinois. At all relevant times hereto, he was in the custody of the State of Illinois, assigned to various prison facilities operated by the Illinois Department of Corrections ("IDOC"), an agency of the State of Illinois, as a sentenced inmate, and at most relevant times described herein, to the Hill Correctional Center ("Hill CC"), located in Galesburg, Illinois.

2. At all relevant times hereto, Defendant Brian S. Duncan was a resident of the State of Illinois and was acting under color of state law as a Correctional Officer employed by the IDOC at the Hill CC.

3. At all relevant times hereto, Defendant Kelly Miller was a resident of the State of Illinois and was acting under color of state law as a Correctional Officer employed by the IDOC at the Hill CC.

4. At all relevant times hereto, Defendant Larry G. Hallman was a resident of the State of Illinois and was acting under color of state law as a hearing officer and member of the Adjustment Committee, employed by the IDOC and assigned to investigate and hear allegations of violations of rules at the Hill CC.

5. At all relevant times hereto, Defendant Cornealious Sanders was a resident of the State of Illinois and was acting under color of state law as a hearing officer and member of the Adjustment Committee, employed by the IDOC and assigned to investigate and hear allegations of violations of rules at the Hill CC.

6. At all relevant times hereto, Defendant Brian Fairchild was a resident of the State of

2

Illinois and was acting under color of state law as Chairman of the Administrative Review Board for the IDOC, was employed by IDOC and assigned to investigate and review grievances filed by inmates at IDOC facilities, including the Hill CC, determine the merits of the grievances and provide relief to inmates where appropriate.

7. At all relevant times hereto, Defendant Gerardo Acevedo was a resident of the State of Illinois and was acting under color of state law as Warden of the Hill CC, employed by IDOC and responsible for administering that facility. In said capacity, Defendant Acevedo was responsible for overseeing the handling of all allegations of officer misconduct and discipline of officers under his command, and the handling of all allegations of violations of rules by inmates and the disposition of same.

8. From September 2010 to the present, Defendant Gladyse C. Taylor has been acting under color of state law in her capacity as Acting Director of the IDOC, and employed by IDOC, in which capacity she has been, and is, responsible, for establishing, amending and enforcing the regulations and policies of the IDOC, including those concerning the discipline of officers and the grievances of prison inmates.

FACTUAL ALLEGATIONS

9. On or about February 5, 2008, Plaintiff was sentenced to a term of incarceration with IDOC of ten years, arising from a criminal conviction imposed in Logan County Case No. 07-CF-135.

10. Prior to and as of October 1, 2009, Plaintiff was being incarcerated and housed at the Hill CC.

11. At the time of his incarceration, Plaintiff suffered from several pre-existing

debilitating medical conditions and disabilities, including:

    a. Following a severe multiple fracture to his left leg and knee, he had his knee essentially replaced and his leg and hip held in place with internal metal nails and rods. He also requires an external brace on the leg in order to protect it from further damage.

    b. He further suffered trauma-induced osteomyelitis, a degenerative bone condition, causing chronic and severe pain to his left leg, hip and lower back.

    c. His left leg is approximately two inches shorter than his right leg, requiring a built-up shoe or shoe lift, for his left foot, and/or other ambulatory aids, in order to walk correctly and maintain his spine in alignment.

12. As a consequence of these pre-existing conditions, Plaintiff cannot run, can only walk slowly and with difficulty, and cannot lift himself up from a seated or lying position without the use of his hands.

13. On October 1, 2009, at approximately 10:25 a.m., Plaintiff was in segregation, and, pursuant to rules in force at the Hill CC, was escorted to a shower room at the Hill CC by a Correctional Officer to take a shower. On this occasion, he was escorted to the shower by a Sergeant Frost.

14. Under the rules in force at the Hill CC, Plaintiff was entitled and authorized to have access to a mirror for shaving purposes and access to a nail clipper so that he could trim his nails. At that time, Plaintiff was suffering pain from an ingrown toenail and badly needed the opportunity to trim his nails. Plaintiff requested a mirror and nail clippers from Sergeant Frost and was told he could have them while in the shower.

15. Sergeant Frost did provide Plaintiff with a mirror but did not provide him with nail

clippers. He then left, leaving Defendant Duncan in charge of the custody and movement of Plaintiff.

16. As soon as Sergeant Frost left, without cause or justification, Defendant Duncan began berating and taunting Plaintiff, calling him derogatory names and yelling at him that he was not going to get the nail clippers. Instead, before Plaintiff had an opportunity to use the clippers and trim his nails, Defendant Duncan handcuffed Plaintiff behind his back, intentionally squeezing them so tightly as to inflict pain and cutting into the flesh near his wrists. Defendant Duncan did so knowing that Plaintiff was disabled and would have great difficulty ambulating if cuffed behind his back.

17. At that time and place, Plaintiff asked Defendant Duncan if he would ask Sergeant Frost for the nail clippers. Defendant Duncan refused. Plaintiff then asked again if he could please use the nail clippers.

18. Without cause or penological justification, Defendant Duncan responded to the latter request by charging at Plaintiff, grabbing him by the ankles and flipping him onto his back, such that his head, neck, back, and wrists, still handcuffed, struck the concrete floor, hard, inflicting excruciating pain and causing a fracture to his right forearm near his wrist.

19. Defendant Duncan, joined by Defendant Miller, then began berating Plaintiff and yelling at him to get up off the floor, even though he was unable to get up due to his disability and the fact that he was handcuffed behind his back and had no way to lift himself off the floor. Without cause or penological justification, Defendants Duncan and Miller then began kicking Plaintiff while yelling at him to get up, even though Plaintiff told them that he was disabled and unable to get up off the floor.

5

20. Without cause or penological justification, Defendant Duncan then dragged Plaintiff along the ground, pulling him by the handcuffs, toward his cell. Without cause or penological justification, Defendant Miller then took over and continued to drag Plaintiff along the ground the remainder of the distance to his cell, then tried to force Plaintiff's legs through the cell doorway even though Plaintiff's left leg has no knee and could not bend. Without cause or penological justification, Defendant Miller then intentionally slammed the cell door on Plaintiff's leg before finally getting him into the cell.

21. Without cause or penological justification, Defendant Duncan then filed a disciplinary report against Plaintiff, falsely alleging that Plaintiff had disobeyed a direct order, had threatened him and had advanced toward him "in an aggressive manner." As a consequence of this false report, IDOC, in an action approved by Defendants Hallman, Sanders and Acevedo, punished Plaintiff by imposing two months of segregation and six months' of Grade C status, which barred Plaintiff from contact visits or phone contact, loss of gym privileges and only one time of commissary access per month.

22. As a direct and proximate consequence of the injuries inflicted by Defendant Duncan, Plaintiff has suffered extreme physical pain and mental anguish, enduring pain to his neck and back, damage to the orthopedic hardware located in his left hip and leg, neurological damage not yet diagnosed but causing periodic seizures and blackouts, and severe mental and emotional distress.

INCORPORATION OF ALLEGATIONS

23. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-22 into each of the following causes of action as if fully set forth therein.

# FIRST CAUSE OF ACTION

## PLAINTIFF'S CLAIM AGAINST DEFENDANT BRIAN S. DUNCAN

24. The acts committed by Defendant Duncan as described in paragraphs 16-21 constituted cruel and unusual punishment, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

25. In committing the hereinbefore described actions, Defendant Duncan was not acting to restore discipline but was acting maliciously and sadistically for the purpose of causing harm.

26. In committing the hereinbefore described actions, Defendant Duncan either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Brian S. Duncan. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Duncan for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Duncan;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

# SECOND CAUSE OF ACTION

## PLAINTIFF'S CLAIM AGAINST DEFENDANT KELLY MILLER

27. The acts committed by Defendant Miller as described in paragraphs 19-20 constituted

cruel and unusual punishment, in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

28. In committing the hereinbefore described actions, Defendant Miller was not acting to restore discipline but was acting maliciously and sadistically for the purpose of causing harm.

29. In committing the hereinbefore described actions, Defendant Miller either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Kelly Miller. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Miller for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Miller;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

### THIRD CAUSE OF ACTION

#### PLAINTIFF'S CLAIM AGAINST DEFENDANT LARRY G. HALLMAN

30. Defendant Hallman was charged with the responsibility to investigate and review the Disciplinary Report filed against Plaintiff by Defendant Duncan, fairly and impartially. Defendant Hallman intentionally failed and refused to do so; intentionally failed and refused to contact or interview witnesses known to have observed the incident described in paragraphs 16-

20 herein, and intentionally failed and refused to view a videotape or video recording of that incident even after being made aware that the incident had been recorded.

31. Defendant Hallman then intentionally upheld the discipline imposed on Plaintiff, of two months' segregation and six months on C Grade status, knowing that the facts may not have warranted such punishment.

32. As a direct consequence of Defendant Hallman's intentional acts and omissions, Plaintiff was subjected to additional inhumane conditions of confinement that inflicted serious mental and emotional injury upon him.

33. In committing the hereinbefore described actions, Defendant Hallman either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Larry G. Hallman. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Hallman for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Hallman;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

## FOURTH CAUSE OF ACTION

## PLAINTIFF'S CLAIM AGAINST DEFENDANT CORNEALIOUS SANDERS

34. Defendant Sanders was charged with the responsibility to investigate and review the Disciplinary Report filed against Plaintiff by Defendant Duncan, fairly and impartially. Defendant Sanders intentionally failed and refused to do so; intentionally failed and refused to contact or interview witnesses known to have observed the incident described in paragraphs 16-20 herein, and intentionally failed and refused to view a videotape or video recording of that incident even after being made aware that the incident had been recorded.

35. Defendant Sanders then intentionally upheld the discipline imposed on Plaintiff, of two months' segregation and six months on C Grade status, knowing that the facts may not have warranted such punishment.

36. As a direct consequence of Defendant Sanders' intentional acts and omissions, Plaintiff was subjected to additional inhumane conditions of confinement that inflicted serious mental and emotional injury upon him.

37. In committing the hereinbefore described actions, Defendant Sanders either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Cornealious Sanders. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Sanders for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Sanders;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

## FIFTH CAUSE OF ACTION

### PLAINTIFF'S CLAIM AGAINST DEFENDANT BRIAN FAIRCHILD

38. Defendant Fairchild was charged with the responsibility to investigate and review the grievance filed by Plaintiff over the acts described in paragraphs 16-21 herein, fairly and impartially, and to provide relief to Plaintiff if warranted. Defendant Fairchild intentionally failed and refused to do so; intentionally failed and refused to contact or interview witnesses known to have observed the incident described in paragraphs 16-20 herein, and intentionally failed and refused to view a videotape or video recording of that incident even after being made aware that the incident had been recorded.

39. Defendant Fairchild then intentionally denied the grievance filed by Plaintiff, which therefore caused Plaintiff to suffer the consequences of two months' segregation and six months on C Grade status, knowing that the facts may not have warranted such punishment.

40. As a direct consequence of Defendant Fairchild's intentional acts and omissions, Plaintiff was subjected to additional inhumane conditions of confinement that inflicted serious mental and emotional injury upon him.

41. In committing the hereinbefore described actions, Defendant Fairchild either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment

while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Brian Fairchild. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Fairchild for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Fairchild;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

## SIXTH CAUSE OF ACTION

### PLAINTIFF'S CLAIM AGAINST DEFENDANT GERARDO ACEVEDO

42. Defendant Acevedo was made aware of both the disciplinary report described in paragraph 21 and the grievance filed by Plaintiff over the acts described in paragraphs 16-21 herein, and had the responsibility to investigate and review both sets of allegations, fairly and impartially, and to rescind the discipline imposed on Plaintiff or otherwise provide relief to Plaintiff if warranted. Defendant Acevedo intentionally failed and refused to do so; intentionally failed and refused to contact or interview witnesses known to have observed the incident described in paragraphs 16-20 herein, and intentionally failed and refused to view a videotape or video recording of that incident even after being made aware that the incident had been recorded.

43. Defendant Acevedo intentionally denied the grievance filed by Plaintiff, which therefore caused Plaintiff to suffer the consequences of two months' segregation and six months on C Grade status, knowing that the facts may not have warranted such punishment.

44. As a direct consequence of Defendant Acevedo's intentional acts and omissions, Plaintiff was subjected to additional inhumane conditions of confinement that inflicted serious mental and emotional injury upon him.

45. In committing the hereinbefore described actions, Defendant Acevedo either deliberately intended to harm Plaintiff and/or acted with utter indifference to, or conscious disregard for, his Eighth Amendment right not to be subjected to cruel and unusual punishment while incarcerated.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Gerardo Acevedo. Plaintiff further prays that he be awarded:

A. Compensatory damages in an amount to be determined at trial against Defendant Acevedo for the matters alleged in this Complaint;

B. Punitive damages in an amount to be determined at trial against Defendant Acevedo;

C. Costs of suit incurred;

D. Reasonable attorney's fees; and

E. Such other and further relief as the Court may deem proper.

## SEVENTH CAUSE OF ACTION

### PLAINTIFF'S CLAIM AGAINST DEFENDANT GLADYSE C. TAYLOR

46. As Acting Director of IDOC, Defendant Taylor has both the authority and the responsibility to correct inmates' disciplinary records when inmates are unjustly found to be in violation of IDOC rules, without a factual basis, and punished for same.

WHEREFORE, Plaintiff prays that judgment be entered in his favor and against Defendant Gladyse C. Taylor, and that Defendant Taylor be ordered and enjoined to expunge

and remove from Plaintiff's record the false Disciplinary Report filed against him by Defendant Duncan and all associated records of discipline imposed upon him on the basis of said false Disciplinary Report and that he be awarded costs of suit incurred; reasonable attorney's fees; and such other and further relief as the Court may deem proper.

  Plaintiff further demands trial by jury on all claims and issues triable by jury.

                   JOHN K. ADAMS, PLAINTIFF

Dated: May 23, 2011            By: s/ Richard J. Whitney
                        Richard J. Whitney
                        Attorney for Plaintiff

Richard J. Whitney
ARDC# 06238355
Speir & Whitney
Milwood Executive Suites
3200 Fishback Rd.
Carbondale, IL 62901
Telephone: (618)549-5159